RECEIVED & FILE
6 MAR -3 AM 10: 02
U.S. CLERK'S OFFICE
DISTRICT COURT
SAN JUAN, P.R.

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

IN THE MATTER OF:

NELSON ROCHET-SANTORO

Misc. No. 03-016 (JAF)
Civil No. 96-2443 (JAF)

-------------------------------------------------

**OPINION AND ORDER**

On November 1, 2005, we issued an endorsed order adopting the September 26, 2005, sealed Report and Recommendation ("R&R") issued by Magistrate Judge Delgado-Colón, which recommended the commencement of disciplinary proceedings leading to the disbarment of attorney Nelson Rochet-Santoro ("Rochet" or "Petitioner"), due to violations of the American Bar Association's Model Rules of Professional Conduct ("Model Rules"). Docket Document No. 63. The Magistrate Judge's report concluded that Rochet's conduct as counsel in Civil Case Number 96-2443 violated Model Rules 1.1, 1.3, 1.4, 1.5, 1.6, 1.8(f); 3.2; 5.4(a),(b),(c), and (d)(1); 8.2(a) and 8.4(a),(c), and (d). The Magistrate, therefore, recommended that Rochet be certified to show cause in writing as to why disciplinary proceedings leading to his disbarment should not be administered. Id.

On October 7, 2005, Rochet filed an objection to the R&R, issuing a blanket denial of all of the factual findings, and arguing that he had been deprived of his procedural due process rights. Docket Document No. 67. On January 19, 2006, we ordered a

Misc. No. 03-016 & Civ. No. 96-2443(JAF)                    -2-

1    disciplinary hearing for February 15, 2006, where Rochet was to be

2    heard as to why he should not be disbarred for the misconduct found

3    by the Magistrate Judge.  <u>Docket Document No. 76</u>.  On February 13,

4    2006, Rochet filed motions alleging deprivation of his procedural due

5    process rights and requesting the resignation of Magistrate Judge

6    Delgado-Colón.  <u>Docket Document Nos. 78, 79</u>.  Rochet failed to appear

7    at the disciplinary hearing on February 15, 2006, and has not

8    provided this court with any explanation for his absence.  <u>Docket</u>

9    <u>Document No. 80</u>.

10   On March 1, 2006, the active judges of this District discussed

11   this matter.  After careful review of the record, the Magistrate

12   Judge's findings, and Rochet's objections, it was concluded that

13   Rochet's procedural due process rights have been respected.  Due to

14   the serious and egregious nature of the misconduct involved, we

15   agreed to order that Rochet be disbarred from practice in the United

16   States District Court for the District of  Puerto Rico.

17                                   **I.**

18                 **Factual and Procedural Synopsis**

19   To review the origins of this matter, we briefly summarize the

20   factual and procedural history as delineated in the R&R, expounding

21   where necessary. <u>Docket Document No. 63</u>.

1        On November 21, 1996, in the area of Río Piedras, Puerto Rico,

2    a  gas  explosion  caused  extensive  damage  to  several  commercial

3    establishments, fruit vendors, and individuals.  As a result of the

4    incident, over one-hundred law suits were brought before this court

5    against  the  Enron  Corporation,  San  Juan  Gas,  and  various  other

6    defendants.    All  civil  cases  were  consolidated  under  Civil  Case

7    No.  96-2443,  commonly  referred  to  as  the  "Río  Piedras  Explosion

8    Litigation," and were subjected to a global settlement with payments

9    being issued to plaintiffs under the supervision of the presiding

10   judicial  officer,  District  Judge  Robert  J.  Ward,  now  deceased.

11   Rochet,  an  attorney  admitted  to  practice  before  this  court,

12   represented multiple plaintiffs involved in the litigation.

13       On February 6, 2003, Judge Ward, concerned about the propriety

14   of deductions made by Rochet from the settlement amounts awarded to

15   some  of  his  clients,  opened  the  matter  for  investigation  as  a

16   separate case, assigned Misc. Case No. 03-16, and referred the matter

17   to   Magistrate   Judge   Delgado-Colón.     Docket   Document   No.  1.

18   Subsequent to the court order initiating the investigation, numerous

19   plaintiffs previously represented by Rochet filed letters or motions

20   complaining of Rochet's professional conduct and the quality of legal

21   services he rendered.  See Docket Document Nos. 3, 4, 5, 6, 11, 24,

22   27.  In their filings, Rochet's former clients expressed a multitude

Case 3:96-cv-02443-JAF   Document 3835   Filed 03/03/2006   Page 4 of 32

Misc. No. 03-016 & Civ. No. 96-2443(JAF)                          -4-

1       of concerns, expanding into allegations of misconduct well beyond the
2       deductions that initially spawned the investigation, including
3       dissatisfaction with the manner in which Rochet: (a) presented cases
4       to clients; (b) communicated with clients; (c) threatened clients to
5       sign attorney's fee contracts; and (d) disbursed settlement awards
6       among successful litigants. Additionally, through the course of the
7       investigation, it was discovered that Rochet had entered into a
8       contract with a non-attorney, Certified Public Accountant Enrique
9       Cardona, to share the attorney's fees from the Río Piedras Explosion
10      Litigation.

11          Evidentiary hearings relating to the disputed settlement
12      deductions were initially held on June 23, 24, 25, and July 15, 2003.
13      Docket Document No. 36. On July 21, 2003, the court granted Rochet
14      ten days to file an informative motion regarding any desired
15      clarifications to the testimony submitted at the evidentiary
16      hearings. Docket Document No. 21. On August 13, 2003, Rochet filed
17      an objection to the testimony given by his former secretary, Nora
18      Reyes, at the July 15, 2003, evidentiary hearing. Docket Document
19      Nos. 21, 23. Subsequently, Magistrate Judge Delgado-Colón considered
20      documentary evidence and held several in-chambers conferences
21      regarding the final disbursement of settlement amounts. Additional

Case 3:96-cv-02443-JAF    Document 3835    Filed 03/03/2006    Page 5 of 32

Misc. No. 03-016 & Civ. No. 96-2443(JAF)                                    -5-

1    evidentiary hearings were held on June 29 and 30, and July 27, 2005.
2    Docket Document Nos. 54, 55, 59.

3         On September 26, 2005, Magistrate Judge Delgado-Colón issued the
4    R&R regarding the disbursement of funds to Rochet's clients involved
5    in the Río Piedras Explosion Litigation, Docket Document No. 64, and
6    a report recommending the commencement of disciplinary proceedings
7    against Rochet. Docket Document No. 63.

8         On October 7, 2005, Rochet filed an objection to the Magistrate
9    Judge's report, and filed a motion requesting additional time to
10   supplement his objection. Docket Document Nos. 66, 67. Rochet's
11   motion for an extension of time was granted, and he was given until
12   October 17, 2005, to supplement his objection. Docket Document
13   No. 68. Rochet did not file any additional information in support of
14   his objection.

15        On January 19, 2006, this court ordered a hearing to be held on
16   February 15, 2006, where Rochet was given the opportunity to show
17   cause as to why he should not be disbarred for the misconduct found
18   in the Magistrate's report. Docket Document No. 76. On February 13,
19   2006, Rochet filed motions alleging deprivation of his procedural due
20   process rights, and requesting the resignation of Magistrate Judge
21   Delgado-Colón. Docket Document Nos. 78, 79. Rochet failed to appear
22   at the disciplinary hearing on February 15, 2006, and has since

1    failed to provide this court with any explanation for his absence.

2    Docket Document No. 80.

3                                  **II.**

4                           **Legal Standards**

5    **A.   Disciplinary Proceedings**

6         "Any court which has the power to admit attorneys to practice

7    may also sanction them for unprofessional conduct." Standing Comm. on

8    Discipline v. Ross, 735 F.2d 1168, 1170 (9th Cir. 1984). "In the

9    federal system there is no uniform procedure for disciplinary

10   proceedings." Id. The individual judicial districts are free to

11   define the rules to be followed and the grounds for punishment. See

12   28 U.S.C. § 1654. Federal district courts are bound by the

13   disciplinary rules they implement when proceeding against attorneys

14   for violation of ethical standards. Dailey v. Vought Aircraft Co.,

15   141 F.3d 224, 230 (5th Cir. 1998); Matter of Thalheim, 853 F.2d 383,

16   386, 388 (5th Cir. 1988); United States v. Stoneberger, 805 F.2d

17   1391, 1393 (9th Cir. 1986); Matter of Abrams, 521 F.2d 1094, 1104-05

18   (3d Cir. 1975).

19        Rule 83.5 of the Local Rules of the United States District Court

20   for the District of Puerto Rico provides the procedure that must be

21   followed when misconduct or allegations of misconduct by an attorney

22   admitted to practice in this jurisdiction come before this court.

1    Local Rule 83.5 states that "[a]ny attorney admitted to practice

2    before this Court may be disbarred, suspended from practice,

3    reprimanded, or subjected to such other disciplinary action as the

4    circumstances may warrant for misconduct defined in these Rules, and

5    for good cause shown, and after notice and opportunity to be heard."

6    D.P.R. LOCAL R. 83.5(a).  The rules specify that any

7              [a]cts or omissions by an attorney admitted to
8              practice before this Court, individually or in
9              concert with any other person or persons, which
10             violate the Model Rules of Professional Conduct,
11             as amended, shall constitute misconduct and
12             shall be grounds for discipline, whether or not
13             the act or omission occurred in the course of an
14             attorney-client relationship or in the course of
15             judicial proceedings.
16
17   Id.
18
19   Rule 83.5(b) further states that when "misconduct or allegations

20   of misconduct" are brought to the attention of the court, "the Judge

21   shall refer the matter before a Magistrate Judge or Disciplinary

22   Committee for investigation and a report and recommendation." D.P.R.

23   LOCAL R. 83.5(b).

24   Upon notice of the report and recommendation, the attorney is

25   given fifteen days to file objections with the court.  Id.

26   Thereafter, the matter is submitted to the court for final

27   determination.  Id.

28   **B.   Clear-and-Convincing-Evidence Standard**

1    The clear-and-convincing-evidence standard has been recognized
2    as the applicable standard in attorney discipline proceedings. See
3    Sealed Appellant 1 v. Sealed Appellee 1, 211 F.3d 252, 256 (5th Cir.
4    2000); In re Medrano, 956 F.2d 101, 102 (5th Cir. 1992) (a court may
5    discipline an attorney only upon the presentation of clear and
6    convincing evidence); Rosenthal v. Justices of the S. Ct. of Cal.,
7    910 F.2d 561, 564 (9th Cir. 1990)("[t]he burden is on the state to
8    establish culpability by convincing proof and to a reasonable
9    certainty"); In re Levine, 675 F. Supp. 1312, 1318 (M.D. Fla. 1986);
10   cf. In re Córdova-González, 996 F.2d 1334, 1336 (1st Cir. 1993)
11   (citing Rosenthal for the procedural due process rights of a charged
12   attorney in a disciplinary proceeding); New England Ins. Co. v.
13   Sylvia, 783 F. Supp. 6, 10 (D.N.H. 1991); but see In re Palmisano, 70
14   F.3d 483, 486 (7th Cir. 1995) (adopting preponderance of the evidence
15   standard). An attorney disciplinary proceeding does not require that
16   civil or criminal liability be established. In the Matter of Darrel
17   E. Johnson, 729 P.2d 1175, 1180-81 (Kan. 1986).

18   The Supreme Court has defined the clear and convincing standard
19   "as that weight of proof which 'produces in the mind of the trier of
20   fact a firm belief or conviction as to the truth of the allegations
21   sought to be established, evidence so clear, direct and weighty and
22   convincing as to enable the fact finder to come to a clear

1    conviction, without hesitancy, of the truth of the precise facts'" of

2    the case. Medrano, 956 F.2d at 102 (quoting Cruzan by Cruzan v. Dir.,

3    Mo. Dep't. of Health, 497 U.S. 261, 285 n.11 (1990) (internal

4    punctuation and citations omitted)).

5                                 **III.**

6                               **Analysis**

7         Rochet's objection to the Magistrate's report appears to focus

8    on the claim that he was deprived of his procedural due process

9    rights as: (1) he was not placed on notice of the disciplinary

10   proceedings against him; (2) he was not given the opportunity to

11   cross-examine or confront witnesses testifying about his alleged

12   misconduct; and (3) Magistrate Judge Delgado-Colón did not perform

13   her judicial duties in an impartial, neutral manner. Docket Document

14   No. 67. We examine each of Rochet's claims in turn and, for the

15   reasons stated below, find them unconvincing.

16   **A.   Procedural Due Process**

17        Due process is a flexible concept. A determination of the

18   particular process due depends on the nature of the proceedings and

19   the interests at stake. Goldberg v. Kelly, 397 U.S. 254, 268-69

20   (1970).

21        Although disciplinary proceedings are characterized as quasi-

22   criminal, "the imposition of disciplinary sanctions itself implicates

1     an independent and fundamental duty of the district court – the

2     supervision of the attorneys who practice as members of its bar – in

3     ways that other sanctions simply cannot." Crowe v. Smith, 151 F.3d

4     217, 230 (5th Cir. 1998). Disbarment proceedings, rather than

5                    [a] resolution regarding the alleged criminality
6                    of a person's acts, [are] a determination of the
7                    moral fitness of an attorney to continue in the
8                    practice of law. Although conduct which could
9                    form the basis for a criminal prosecution might
10                   also underlie the institution of disciplinary
11                   proceedings, the focus is upon gauging an
12                   individual's character and fitness, and not upon
13                   adjudging the criminality of his prior acts or
14                   inflicting punishment for them.

16    In re Daley, 549 F.2d 469, 474 (7th Cir. 1977). Thus:

18                   [a] clear distinction exists between proceedings
19                   whose essence is penal, intended to redress
20                   criminal wrongs by imposing sentences of
21                   imprisonment, other types of detention or
22                   commitment, or fines, and proceedings whose
23                   purpose is remedial, intended to protect the
24                   integrity of the courts and to safeguard the
25                   interests of the public by assuring the
26                   continued fitness of attorneys licensed by the
27                   jurisdiction to practice law. The former type
28                   of proceeding is, in actuality, 'criminal' in
29                   nature and therefore within the ambit of the
30                   Fifth Amendment safeguards against self-
31                   incrimination; the latter is not.

33          Id. at 475; see also Johnson, 921 F.2d at 586 (disbarment

34    proceedings "seek to determine the fitness of an official of the

35    court to continue in that capacity and to protect the courts and the

36    public from the official ministration of persons unfit to practice").

1       Therefore, "[a]lthough attorney discipline proceedings have been

2       called 'quasi-criminal,' the due process rights of an attorney in a

3       disciplinary proceeding 'do not extend so far as to guarantee the

4       full panoply of rights afforded to an accused in a criminal case.'"

5       In re Córdova-González, 996 F.2d 1334, 1336 (1st Cir. 1993) (quoting

6       Razatos v. Colo. Supreme Court, 746 F.2d 1429, 1435 (10th Cir.

7       1984))(citations omitted); see also Sealed Appellant, 211 F.3d at

8       254-55 (quoting Razatos); Palmisano, 70 F.3d at 486 (where state

9       court had disbarred attorney using clear and convincing burden of

10      proof, federal court declined to find that quasi-criminal nature of

11      the proceedings required the federal court to make an independent

12      finding of an ethical violation using a reasonable doubt burden of

13      proof); Rosenthal, 910 F.2d at 564 (finding that a lawyer's

14      disciplinary proceeding is not a criminal proceeding and, as a

15      result, protections normally afforded to a criminal defendant do not

16      apply); Matter of Disciplinary Proceedings of Phelps, 637 F.2d 171,

17      176 (10th Cir. 1981)(finding that, although the proceedings were

18      quasi-criminal, the due process right to closing arguments extends

19      only to criminal cases); Daley, 549 F.2d at 476 n.6 (compiling

20      cases).

21      Rather, "an attorney facing discipline 'is entitled to

22      procedural due process, including notice and an opportunity to be

Misc. No. 03-016 & Civ. No. 96-2443(JAF)                              -12-

1    heard.'" Id. (quoting Rosenthal, 910 F.2d at 564); cf. Dailey, 141

2    F.3d at 229 (finding that the quasi-criminal nature of disciplinary

3    proceedings demanded notice and opportunity to be heard); Phelps, 637

4    F.2d at 176 (holding that "the standard in [attorney disciplinary

5    proceedings] is one of permitting the attorney a fair opportunity to

6    present his case"); Lowe v. Scott, 959 F.2d 323, 335 (1st Cir. 1992)

7    (due process in proceeding to revoke physician's license requires

8    notice of the charges and an opportunity to be heard).   In fact,

9    "that attorney discipline proceedings require proof only by clear and

10   convincing evidence, as opposed to 'beyond a reasonable doubt,' is

11   indicative of the mere quasi-criminal nature of such proceedings,

12   whose nature would not implicate all of the due process requirements

13   attendant purely criminal proceedings." Sealed Appellant, 211 F.3d at

14   254-55.[1]

15        Therefore, inasmuch as Rochet suggests the procedures here are

16   insufficient because they do not grant him traditional measures of

17   criminal due process, these arguments fail.    Romero-Barceló v.

18   Acevedo-Vilá, 275 F. Supp. 2d 177, 196 (D.P.R. 2003).

19        **1.   Lack of Notice**

20        Rochet claims that he was not placed on notice of the nature of

21   the disciplinary proceedings against him, and has not had access to

---

[1]We note that in at least one circuit, evidentiary hearings are not
absolutely required. In re Evans, 834 F.2d 90, 91 (4th Cir. 1987).

1   the evidence against him. Docket Document Nos. 67, 78, 79. When an
2   attorney faces disciplinary proceedings, he "must receive prior
3   notice as to the 'reach of the proceedings and the precise nature of
4   the charges leveled' against him." Romero-Barceló, 275 F. Supp. 2d
5   at 191 (quoting In re Ruffalo, 390 U.S. 544, 552 (1968)). A court
6   apprised of an attorney's misconduct need not limit itself to the
7   charges or characterization of misconduct that initially led to the
8   disciplinary proceedings. Id. at 197. It may "modify the nature of
9   the disciplinary proceedings, as long as it provides the respondent
10  with notice of the alleged misconduct and an opportunity to respond."
11  Id.

12      The current investigation was initiated due to questions
13  regarding the propriety of Rochet's deductions to settlement amounts
14  owed to his clients, but expanded in scope after numerous complaints
15  of professional misconduct were filed by concerned individuals. See
16  Docket Document Nos. 3, 4, 5, 6, 11, 24, 27. However, Rochet has
17  been given more than adequate notice of the investigation's expanded
18  scope.  The  Magistrate  Judge's  report  and  recommendation  has
19  exhaustively detailed the numerous violations of the Model Rules for
20  which Rochet now faces disbarment.   Docket Document No. 63.
21  Additionally, this court, in scheduling the formal disbarment hearing
22  which Rochet failed to attend, again reiterated to Mr. Rochet that he

1     faced disbarment for the conduct outlined in the Magistrate's report.

2     Docket Document No. 76 (Rochet "is again placed on notice of what

3     should, by now, be obvious:  The court requires Mr. Rochet to show

4     cause as to why disciplinary action, including disbarment, should not

5     be ordered in light of the serious and egregious nature of his

6     professional  misconduct  as  found  by  the  Magistrate  Judge's

7     investigation.").

8          Rochet alleges that he is unaware of the nature of the charges

9     against him, as he has not had access to transcripts of certain

10    evidentiary hearings nor alleged "secret" motions filed by his former

11    clients.  Docket Document Nos. 78, 79.  On December 23, 2004, Rochet

12    filed a motion requesting an order to receive transcripts of hearings

13    which took place during June 23, 24, 25, 2003, and July 15, 2003.

14    Docket Document No. 30.  On January 18, 2005, Magistrate Judge

15    Delgado-Colón entered an order granting the motion. In turn, the

16    undersigned instructed the Court's Operations Manager to supply any

17    copies requested by Rochet.  Docket Document No. 31.  We cannot

18    discern what has prevented Rochet from taking advantage of this

19    order, beyond wild accusations that the Magistrate Judge, despite her

20    written order to the contrary, has undertaken "secretive behavior" to

21    block Rochet's access to the hearing transcripts. Docket Document

22    No. 79.  Had Rochet bothered to attend his own disbarment hearing, he

1    may have been able to clarify what has prevented him from accessing
2    the evidentiary hearing transcripts. As it stands, we find Rochet's
3    allegations of access denial wholly without merit.

4         We are similarly puzzled as to the "secret" motions Rochet
5    refers to in his motion, as he has continuously had access to the
6    entire sealed record at the courthouse, and has taken advantage of
7    this access in the past. See, e.g., Docket Document No. 76 ("In
8    respect to Rochet's request for copies of the complaints [filed
9    against him] by his former clients, we remind Mr. Rochet that he
10   continues to have the opportunity to view the entire sealed record,
11   including the referenced complaints, of Misc. Case No. 03-016, at the
12   courthouse.").

13        We conclude that Rochet has been on notice of the specific
14   misconduct for which he now faces sanctions, as the Magistrate
15   Judge's report makes abundantly clear what specific actions
16   constitute violation of the Model Rules, and clearly notes that he
17   faces disbarment for his misconduct. Docket Document Nos. 66, 76.

18        **2.   Evidentiary Hearings**

19        Rochet contends that the proceedings before Magistrate Judge
20   Delgado-Colón were conducted without the guarantee of due process as
21   he was not given the opportunity to cross-examine or confront

Case 3:96-cv-02443-JAF   Document 3835   Filed 03/03/2006   Page 16 of 32

Misc. No. 03-016 & Civ. No. 96-2443(JAF)                          -16-

1    witnesses testifying, resulting in the admission of false evidence

2    into the record. Docket Document No. 67.

3        It is well settled that full due process rights do not attach

4    at investigatory stages that do not directly affect or adjudicate

5    rights of an individual. S.E.C. v. Jerry T. O'Brien, Inc., 467 U.S.

6    735, 742 (1984). As the Supreme Court clarified in Hannah v. Larche,

7                    [w]hen governmental agencies adjudicate or make
8                    binding determinations which directly affect the
9                    legal rights of individuals, it is imperative
10                   that those agencies use the procedures which
11                   have traditionally been associated with the
12                   judicial process. On the other hand, when
13                   governmental action does not partake of an
14                   adjudication, as for example, when a general
15                   fact-finding investigation is being conducted,
16                   it is not necessary that the full panoply of
17                   judicial procedures be used.
18
19   363 U.S. 420, 442 (1960)(holding that the Commission of Civil Rights

20   did not have to inform the targets of its investigation of the

21   specific charges, the identities of the complainants, or allow the

22   targets to cross-examine witnesses).

23       When a preliminary determination is without legal effect in and

24   of itself, due process will be satisfied if there is an opportunity

25   to be heard before any final order of the agency becomes effective.

26   Ewing v. Mytinger & Casselberry, 399 U.S. 594, 598 (1950)(stating

27   that the court has "repeatedly held that no hearing at the

28   preliminary stage is required by due process as long as the requisite

1    hearing is held before the final order becomes effective"); <u>Matter of</u>

2    <u>Ellis</u>, 504 N.W.2d 559, 562-63 (N.D. 1993)(fact that attorney was not

3    given notice and did not appear at preliminary investigatory hearing

4    was not a violation of due process when the initial proceeding was

5    followed by more formal disciplinary proceedings); <u>Terrell v. Miss.</u>

6    <u>Bar</u>, 635 So.2d 1377, 1383-84 (Miss. 1994)(finding that the fact the

7    record contained no evidence of service of process and attorney was

8    not given opportunity to cross examine witnesses during precomplaint

9    investigative proceedings did not result in due process violation).

10        The reasoning behind these cases is clear.  A respondent will

11   be able to receive his constitutionally-guaranteed due process if and

12   when the initial investigation leads to formal proceedings.    The

13   investigatory process:

14              [c]ould be completely disrupted if investigative
15              hearings were transformed into trial-like
16              proceedings . . . Fact-finding agencies without
17              any power to adjudicate would be diverted from
18              their legitimate duties and would be plagued by
19              the injection of collateral issues that would
20              make the investigation interminable. Even a
21              person not called as a witness could demand the
22              right to appear at the hearing, cross-examine
23              any witness whose testimony or sworn affidavit
24              allegedly defamed or incriminated him, and call
25              an unlimited number of witnesses of his own
26              selection. This type of proceeding would make a
27              shambles of the investigation and stifle the
28              agency in its gathering of facts.
29
30   <u>Hannah</u>, 363 U.S. at 443-44.
31

1      The evidentiary hearings held by the Magistrate Judge did not

2      have legal effect, in and of themselves, but were used to compile

3      evidence   forming   the   basis   of   the   Magistrate's   report   and

4      recommendation.     The   final   disciplinary   hearing,   scheduled   on

5      February 15, 2006, was the venue where Rochet would have been able to

6      put forth his case and confront the evidence against him, had he

7      chosen to attend.   Docket Document Nos. 80, 81.

8      In   regards   to   Rochet's   assertion   that   he   was   not   able   to

9      directly confront or cross-examine the witnesses that had testified

10     to his misconduct, we note that "[t]he confrontation clause is a

11     criminal law protection," Rosenthal, 910 F.2d at 565, and as such,

12     does not apply to an attorney disciplinary proceeding. Id.  Further,

13     disbarment proceedings are not criminal proceedings, and relaxed

14     rules of evidence apply.  Florida Bar v. Vannier, 498 So. 2d 896, 898

15     (Fla. 1986)(finding that "in bar discipline cases, hearsay is

16     admissible and there is no right to confront witnesses face to face.

17     The referee is not barred by technical rules of evidence."); Matter

18     of Calvo, 88 F.3d 962, 967 (11th Cir. 1996)(citing Vannier, 498 So.2d

19     at 898).

20     Although Rochet was not able to cross-examine witnesses during

21     the evidentiary hearing stage, he was given the opportunity to submit

22     objections   to   counter   the   evidence   introduced   at   the   hearings.

1    Docket Document No. 21 (granting Mr. Rochet the opportunity to file

2    any informative motions to clarify any perceived ambiguities).

3    Rochet took advantage of this opportunity, and filed objections to

4    the testimony of one witness.    Magistrate Judge Delgado-Colón

5    considered Rochet's objections prior to filing the report and

6    recommendation.    Docket Document No. 23.    Rochet also alleges that

7    false testimony was introduced at the hearings, but by his own

8    admission, he objected to the alleged false testimony during the

9    evidentiary hearing, and Magistrate Judge Delgado-Colón considered

10   the testimony in light of Rochet's objection.    Docket Document

11   No. 67.

12           Rochet additionally claims that he did not have adequate time

13   to file his objection to the report and recommendation.    Docket

14   Document No. 67.    In his objection, Rochet states that he was

15   notified of the report on September 27, 2005.    Pursuant to Local Rule

16   83.5, Rochet had fifteen days to file an objection to the report.

17   D.P.R. LOCAL R. 83.5(b). This court granted Rochet until October 17,

18   2005, twenty days after being placed on notice of the report, to

19   supplement his objection, originally filed on October 7, 2005.

20   Docket Document Nos. 67, 68.    Despite this extension, Rochet failed

21   to submit any additional materials to expand upon his original

22   objection.

Case 3:96-cv-02443-JAF    Document 3835    Filed 03/03/2006    Page 20 of 32

Misc. No. 03-016 & Civ. No. 96-2443(JAF)                                -20-

1           Rochet, rather than answering directly to the charges of

2   misconduct clearly elucidated in the Magistrate's report, has instead

3   chosen to file increasingly incomprehensible motions alleging

4   fantastical conspiracies, going so far as to demand the resignation

5   of Magistrate Judge Delgado-Colón.  Docket Document Nos. 79, 80.

6           We find that Rochet has been given the opportunity to confront,

7   challenge, and rebut the evidence against him, but has chosen not to

8   do so.  We, therefore, find his procedural challenge unpersuasive.

9   **3.   Judicial Bias**

10          Rochet has continuously and vehemently protested that Magistrate

11  Judge Delgado-Colón has not acted as an impartial and neutral

12  judicial officer, and her bias has deprived Rochet of his procedural

13  due process rights.  Docket Document Nos. 67, 78, 79.

14          According to Rochet, Magistrate Judge Delgado-Colón's bias is

15  clearly evidenced by her "nasty" attitude during the June 29, 2005,

16  evidentiary hearings; her "inquisitorial" tone; her rejection of a

17  request by Rochet to use the restroom during the June/July 2003

18  hearings; her "holding" of Rochet during the July 15, 2003, hearings,

19  which resulted in the attorney nearly missing his flight; and her

20  Orders of April 12 and June 13, 2005.

21          We remind Rochet that judicial decisions adverse to his

22  interests, such as the orders we believe Rochet refers to in his

1    objection, Docket Document Nos. 36, 48, are not evidence, in and of

2    themselves, of judicial bias.  Rochet's subjective impressions of

3    bias or prejudice, no matter how vehemently expressed, find so

4    little, and such weak, objective corroboration in the record, that we

5    will entirely disregard his reckless characterizations of Magistrate

6    Judge Delgado-Colón's actions.  In re Córdova-Gonzalez, 996 F.2d

7    1334, 1336 (1st Cir. 1993).

8         We conclude that Rochet's procedural due process rights,

9    comprised of notice and the opportunity to be heard,

10   Córdova-González, 996 F.2d at 1336, have more than adequately been

11   met.

12   **B.  Disciplinary Sanctions**

13        The Magistrate Judge's report, based upon multiple evidentiary

14   hearings and in-chambers conferences, lays out in exhaustive detail

15   the specific professional misconduct committed by Rochet during the

16   Río Piedras Explosion litigation.  Docket Document No. 63.  Under

17   Local Rule 72(d), the court is obligated to make a de-novo

18   determination of any portion of a magistrate judge's findings and

19   recommendations to which specific written objection has been made.

20   D.P.R. LOCAL R. 72(d).  The court thereafter may accept, reject or

21   modify, in whole or in part, the findings or recommendations made by

22   the magistrate judge.  Id.  The court need not normally conduct a new

Case 3:96-cv-02443-JAF   Document 3835   Filed 03/03/2006   Page 22 of 32

Misc. No. 03-016 & Civ. No. 96-2443(JAF)                        -22-

1     hearing and may consider the record developed before the magistrate
2     judge, and may make a final determination on the basis of that
3     record. Id. In disciplinary cases, the district court is ultimately
4     responsible for the imposition of sanctions.

5           Although Rochet's objection to the Magistrate Judge's report
6     contains a subheading entitled "Specific Objections," this section is
7     primarily composed of allegations of judicial bias, disposed of
8     above, and an objection to the final disbursement of settlement
9     amounts, rather than specific objections to Magistrate Judge Delgado-
10    Colón's factual findings. Docket Document No. 67. In regards to the
11    findings of professional misconduct, Rochet briefly refers to the
12    fact that the Puerto Rico Supreme Court has dismissed three
13    complaints filed by individuals who had also filed complaints against
14    Rochet in the current federal proceeding, referring to exhibits that
15    do not accompany his filing. Id. Rochet further alleges that
16    another individual testifying at the evidentiary hearings was not
17    actually a former client of his, but rather, a person assuming his
18    client's identity. Id.

19          Given that Rochet has failed to provide additional specific
20    objections to the factual findings, despite being granted additional
21    time to supplement his original motion and having the opportunity to
22    present his case at a disciplinary hearing, and given that we find

Case 3:96-cv-02443-JAF Document 3835 Filed 03/03/2006 Page 23 of 32

Misc. No. 03-016 & Civ. No. 96-2443(JAF)                           -23-

1    Magistrate Delgado-Colón's factual findings to be based on clear and
2    convincing evidence in the record, we accept and adopt the report and
3    recommendation in total. Even if we were to reject those sections of
4    the report touched by Rochet's specific objections, there remains
5    ample evidence of professional misconduct deserving of severe
6    disciplinary sanctions.

7          "Where, as here, a magistrate judge astutely takes the measure
8    of a case and hands down a convincing, well-reasoned decision, the
9    Court should refrain from writing at length to no other end than to
10   hear its own words resonate." Nogueras Cartagena v. United States,
11   172 F. Supp. 2d 296, 305 (D.P.R. 2001) (citing Corrada Betances v.
12   Sea Land Services, Inc., 248 F.3d 40   (1st Cir. 2001) (internal
13   citations omitted).   As such, we decline to repeat the factual
14   findings regarding the extensive violations to the Model Rules
15   verbatim, but instead, highlight the salient portions for the
16   purposes of discussing the disciplinary sanctions to be imposed
17   against Rochet.

18         In determining what sanctions Rochet should face for his
19   egregious professional misconduct, this court will use the American
20   Bar Association's Standards for Imposing Lawyer Sanctions (1986)("ABA
21   Standards") as a basic, but not conclusive, guide. Matter of Brady,
22   923 P.2d 836, 839 (Ariz. 1996)("[a]lthough not mandatory, the ABA

1      Standards are persuasive as to appropriate sanctions and provide a
2      'useful tool' in deciding the sanction to be applied."). The
3      standards make distinctions upon the level of conduct required for
4      particular ethical violations. Id. The standards are adaptable,
5      recognizing that "sanctions imposed must reflect the circumstances of
6      each individual lawyer, and therefore provide for consideration of
7      aggravating and mitigating circumstances in each case." Id. at § 1.3.

8          Applying the ABA Standards to Rochet's conduct as found in the
9      report and recommendation, it is clear that disbarment is required.
10     The ABA Standards provide for disbarment when a lawyer "with the
11     intent to benefit the lawyer or another, knowingly reveals
12     information relating to representation of a client not otherwise
13     lawfully permitted to be disclosed, and this disclosure causes injury
14     or potential injury to a client." Id. § 4.21. Disbarment is also
15     appropriate in cases where, inter alia, a lawyer: (1) engages in a
16     pattern of neglect with respect to client matters and causes serious
17     or potentially serious injury to a client, Id. § 4.41(c); (2) engages
18     in intentional conduct involving dishonesty, fraud, deceit, or
19     misrepresentation that seriously adversely reflects on the lawyer's
20     fitness to practice, Id. § 5.11(b); or (3) knowingly engages in
21     conduct that is a violation of a duty owed as a professional with the
22     intent to obtain a benefit for the lawyer or another, and causes

1    serious or potentially serious injury to a client, the public, or the

2    legal system. Id. § 7.1. Aggravating factors that may justify an

3    increase in the degree of discipline to be imposed include dishonest

4    or selfish motives, a pattern of misconduct, multiple offenses, and

5    the refusal to acknowledge the wrongful nature of conduct. Id.

6    § 9.2.

7    It is undisputed that Rochet entered into a contract with

8    Certified Public Accountant Enrique Cardona, wherein the latter, in

9    exchange for half of the attorney's fees to which Rochet became

10   entitled, agreed to finance the litigation. Rochet also allowed the

11   accountant to participate in representation decisions while he

12   financed the litigation. Docket Document No. 63. This agreement is

13   in clear violation of Model Rules 1.6,[2] 1.8(f),[3] and 5.4.[4] Rochet has

---

[2] Rule 1.6 states, in pertinent part:

> (a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).

[3] Rule 1.8(f) stipulates that:

> A lawyer shall not accept compensation for representing a client from one other than the client unless:
> (1) the client gives informed consent;
> (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and
> (3) information relating to representation of a client is

1      provided no evidence that his clients were ever informed of the

_____

protected as required by Rule 1.6.

[4]The relevant portions of Rule 5.4 stipulate that:

(a) A lawyer or law firm shall not share legal fees with a
nonlawyer, except that:

(1) an agreement by a lawyer with the lawyer's firm,
partner, or associate may provide for the payment of
money, over a reasonable period of time after the lawyer's
death, to the lawyer's estate or to one or more specified
persons;
(2) a lawyer who purchases the practice of a deceased,
disabled, or disappeared lawyer may, pursuant to the
provisions of Rule 1.17, pay to the estate or other
representative of that lawyer the agreed-upon purchase
price;
(3) a lawyer or law firm may include nonlawyer employees
in a compensation or retirement plan, even though the plan
is based in whole or in part on a profit-sharing
arrangement; and
(4) a lawyer may share court-awarded legal fees with a
nonprofit organization that employed, retained or
recommended employment of the lawyer in the matter.

(b) A lawyer shall not form a partnership with a nonlawyer if
any of the activities of the partnership consist of the practice
of law.

(c) A lawyer shall not permit a person who recommends, employs,
or pays the lawyer to render legal services for another to
direct or regulate the lawyer's professional judgment in
rendering such legal services.

(d) A lawyer shall not practice with or in the form of a
professional corporation or association authorized to practice
law for a profit, if:

(1) a nonlawyer owns any interest therein, except that a
fiduciary representative of the estate of a lawyer may
hold the stock or interest of the lawyer for a reasonable
time during administration;

Misc. No. 03-016 & Civ. No. 96-2443(JAF)                    -27-

1    contract between him and CPA Cardona, or aware of its scope.

2    Magistrate Judge Delgado-Colón concluded that it appears that CPA

3    Cardona was privy to all information pertaining to the claims of

4    Rochet's clients, participated at joint meetings between Rochet and

5    plaintiffs, kept most of the case-related records, and discussed the

6    case with and participated at meetings between Rochet's clients.

7    Docket Document No. 63. It is also clear that Rochet failed to

8    represent his clients with the level of competence and diligence

9    required by Model Rules 1.1,[5] 1.3,[6] 1.4,[7] and 3.2.[8]

---

[5] Rule 1.1 reads as follows:

> A lawyer shall provide competent representation to a client.
> Competent representation requires the legal knowledge, skill,
> thoroughness and preparation reasonably necessary for the
> representation.

[6] Rule 1.3 states:

> A lawyer shall at with reasonable diligence and promptness in
> representing a client.

[7] Rule 1.4 states, in pertinent part:

> (a) A lawyer shall:
>     (1) promptly inform the client of any decision or
>     circumstance with respect to which the client's informed
>     consent, as defined in Rule 1.0(e), is required by these
>     Rules;
>     (2) reasonably consult with the clients about the means by
>     which the client's objectives are to be accomplished;
>     (3) keep the client reasonably informed about the status
>     of the matter;
>     (4) promptly comply with reasonable requests for
>     information;

Case 3:96-cv-02443-JAF    Document 3835    Filed 03/03/2006    Page 28 of 32

Misc. No. 03-016 & Civ. No. 96-2443(JAF)                                    -28-

1    Although Rochet has claimed that the testimony of four witnesses

2    was motivated by bad faith, <u>Docket Document No. 67</u>, he does not

3    address the fact that additional clients have also filed complaints

4    alleging that Rochet never responded to their inquiries, they felt as

5    if their cases were abandoned, they were not assisted in prosecuting

6    their cases, in preparing for depositions, or in securing the expert

7    reports necessary to support their claims.    <u>Docket Document No. 63</u>.

8    Rochet has additionally violated Model Rule 1.5,[9] by attempting to

---

[8] Rule 3.2 states:

> A lawyer shall make reasonable efforts to expedite litigation
> consistent with the interests of the client.

[9] Rule 1.5 reads, in pertinent part:

> (b) The scope of the representation and the basis or rate of the
> fee and expenses for which the client will be responsible shall
> be communicated to the client, preferably in writing, before or
> within a reasonable time after commencing the representation,
> except when the lawyer will charge a regularly represented
> client on the same basis or rate. Any changes in the basis or
> rate of the fee or expenses shall also be communicated to the
> client.
>
> (c) A fee may be contingent on the outcome of the matter for
> which the service is rendered, except in a matter in which a
> contingent fee is prohibited by paragraph (d) or other law. A
> contingent fee agreement shall be in a writing signed by the
> client and shall state the method by which the fee is to be
> determined, including the percentage or percentages that shall
> accrue to the lawyer in the event of settlement, trial or
> appeal; litigation and other expenses to be deducted from the
> recovery; and whether such expenses are to be deducted before or
> after the contingent fee is calculated. The agreement must
> clearly notify the client of any expenses for which the client
> will be liable whether or not the client is the prevailing
> party. Upon conclusion of a contingent fee matter, the lawyer

1    include administrative expenses as part of the contingent fee

2    agreement, despite no prior notice or agreement with each client. As

3    stated in the report and recommendation, "[i]n the absence of an

4    agreement to the contrary, it is impermissible for a lawyer to create

5    an additional source of profit for the law firm beyond that which is

6    contained in the provision of professional services." Docket Document

7    No. 63.

8         Magistrate Judge Delgado-Colón has also found evidence that

9    Rochet informed clients that Judge Ward was a "racist, sent to the

10   Federal Court to cut the heads off Hispanics, that disliked Hispanics

11   and was to [sic] dismiss the complaint," in order to induce his

12   clients to endorse the settlement agreement and sign the Attorney Fee

13   Contract.   Docket Document No. 63.   This conduct is in clear

14   violation of Model Rules 8.2(a),[10] and 8.4(d).[11]   The Magistrate Judge

---

shall provide the client with a written statement stating the
outcome of the matter and, if there is a recovery, showing the
remittance to the client and the method of its determination.

[10] Rule 8.2(a) states:

A lawyer shall not make a statement that the lawyer knows to be
false or with reckless disregard as to its truth or falsity
concerning the qualifications or integrity of a judge,
adjudicatory officer or public legal officer, or of a candidate
for election or appointment to judicial or legal office.

[11] Rule 8.4, in pertinent part, reads:

It is professional misconduct for a lawyer to:

1    additionally found evidence that Rochet violated Model Rule 8.4 by
2    threatening clients in order to obtain endorsement of belatedly-
3    submitted attorney's fees contracts, assuring a case outcome,
4    charging for expenses not incurred, and pre-dating or altering
5    documents.

6        Through his contract with CPA Cardona, Rochet revealed
7    confidences to non-privileged parties for his own personal gain.
8    Rochet's conduct additionally evidenced a pattern both of neglect and
9    intentional dishonesty adversely affecting his clients' interests.
10   In total, the professional misconduct committed by Rochet during his
11   representation of the Río Piedras plaintiffs is astonishing and
12   utterly unacceptable. Due to the serious and egregious nature of the
13   misconduct involved, we have no choice but to order that Rochet-
14   Santoro be disbarred from practice in the District Court for the
15   District of Puerto Rico.

16

> (a) violate or attempt to violate the Rules of
> Professional Conduct, knowingly assist or induce another
> to do so, or do so through the acts of another;
> . . .
>
> (c) engage in conduct involving dishonesty, fraud, deceit
> or misrepresentation;
>
> (d) engage in conduct that is prejudicial to the
> administration of justice;
> . . . .

1                                    **III.**

2                                **Conclusion**

3           "The power of a court to impose appropriate and reasonable

4    sanctions upon those admitted to its bar is a familiar phenomenon and

5    lies within the inherent power of any court of record.'" <u>Flaksa v.</u>

6    <u>Little River Marine Constr. Co.</u>, 389 F.2d 885, 889 n.10 (5th Cir.

7    1968)(quoting <u>Gamble v. Pope & Talbert, Inc.</u>, 307 F.2d 729, 735 (3d

8    Cir. 1962) (Biggs, CJ., dissenting)); <u>see also</u> <u>Mandanici</u>, 152 F.3d at

9    751 ("every court has inherent authority to disbar or discipline

10   attorneys for unprofessional conduct . . . .")(Beam, J. concurring in

11   part). "Disciplinary procedures are viewed as a function of

12   maintaining the integrity of the bar and avoiding the appearance of

13   impropriety . . . . Thus, discipline of . . . attorneys is seen as

14   both 'a catharsis for the profession and a prophylactic for the

15   public.'" <u>In re Stoner</u>, 507 F.Supp. 490, 492 (N.D. Ga. 1981)

16   (citations omitted).

17          We have clear and convincing evidence that Attorney Nelson

18   Rochet-Santoro's conduct has violated Model Rules of Professional

19   Conduct 1.1, 1.3, 1.4, 1.5, 1.6, 1.8(f); 3.2; 5.4(a), (b), (c), and

20   (d)(1); 8.2(a) and 8.4(a),(c), and (d). We, therefore, order Rochet's

21   disbarment.

22          **IT IS SO ORDERED.**

1        San Juan, Puerto Rico, this 2nd day of March, 2006.

2                            **BY ORDER OF THE COURT:**

3                            S/José Antonio Fusté
4                            JOSE ANTONIO FUSTE
5                            Chief U.S. District Judge